**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Century 21 Real Estate LLC,             ) | No. CIV 03-0053-PHX-SMM |
|                            )  |  |
| Plaintiff ,             ) | **ORDER** |
|                            )  |  |
| vs.                     )  |  |
|                            )  |  |
|                            )  |  |
| Century Surety Co.,            )  |  |
|                            )  |  |
| Defendants.             )  |  |
| _____) |  |

On March 16, 2006, the Court granted Century Surety Co.'s ("Century") motion for summary judgment on, *inter alia*, Century 21 Real Estate LLC's ("C21") claim for dilution based on the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c) (the "FTDA"). See Dkt. 177 at 45-51 (the "March 16 Order"). On December 11, 2006, C21 filed a Motion to Reconsider Order on Dilution (the "Motion to Reconsider"), based on revisions to the FTDA. Dkt. 235. After the Court ordered a response, Century filed its Opposition to C21's Motion to Reconsider. Dkts. 236-37. C21 then filed a Reply to Century's Opposition (dkt. 238).[1]

---

[1] In its initial order granting and denying C21's motion for reconsideration, the Court erroneously stated that C21 had filed a Reply to Century's Opposition in violation of Local Rule 7.2(g). The Court subsequently discovered that C21's Reply was properly filed. See dkts. 236, 244. This Order is issued to correct the Court's misstatement and, after considering the arguments in C21's Reply, to address two points that have not yet been discussed.

## STANDARD OF REVIEW

"Reconsideration is proper if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the decision was manifestly unjust; or (3) if there is an intervening change in controlling law." School Dist. No. 1J Multnomah City v. Acands, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted).

## DISCUSSION

### 1.   The Trademark Dilution Revision Act of 2006

On October 6, 2006, the Trademark Dilution Revision Act of 2006 (the "TDRA") was signed into law and became effective immediately. See Pub.L. 109-312, 120 Stat. 1730 (Oct. 6, 2006). The amended version of 15 U.S.C. § 1125 applies to federal dilution claims, such as the one C21 filed against Century. Under the TDRA, § 1125 now provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce *that is likely to cause dilution by blurring* or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1), emphasis added.

The TDRA revised the FTDA in three significant ways: (i) a *likelihood of dilution*, rather than *actual dilution*, is now a prerequisite to establishing a dilution claim; (ii) courts may apply four factors to determine whether a mark is famous and protection is denied to marks that are famous in only "niche" markets; and (iii) courts may apply six factors to determine whether there is a likelihood of dilution. See House Report on Trademark Dilution Act of 2005 at 8, 25 ("House Report"); dkts. 235 at 2; 237 at 2-3. Due to this change in the

- 2 -

law, the Court will grant C21's request to reconsider its earlier conclusions regarding C21's federal dilution claim and determine whether the March 16 Order requires modification or revision. See School Dist. No. 1J Multnomah City, 5 F.3d at 1263. Because the March 16 Order was based on two factors that are not impacted by the change in law, however, the Court will reaffirm its previous determination that C21's federal dilution claim must be dismissed as a matter of law.[2] See Dkt. 177 at 46-51. Moreover, as shown below, even applying the new law, C21's federal dilution claim was properly dismissed.

**2.     The March 16 Order Properly Dismissed C21's Federal Dilution Claim**

In the March 16 Order, the Court dismissed C21's federal dilution claim for two *alternative* reasons. First, as a matter of law, no reasonable jury could conclude that the term "Century" is identical, or nearly identical, to the term "Century 21." See dkt. 177 at 46-47. Although the TDRA no longer requires actual dilution, the new law does not eliminate the requirement that the mark used by the alleged diluter be "identical," "nearly identical," or "substantially similar," to the protected mark. See House Report at 8, 25; 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the *similarity* between a mark or trade name and a famous mark . . . .") (emphasis added); Playboy Enters., Inc. v. Welles, 279 F.3d 796, 806 n.41 (9th Cir. 2002) (elucidating the "identical or nearly identical" standard for dilution); Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 906 (9th Cir. 2002) ("[t]he marks must be of sufficient similarity so that, in the mind of the consumer, the junior mark will conjure an association with the senior").  Because there is no genuine dispute of fact that the mark "Century 21" is not substantially similar to the mark "Century" (see dkt. 177 at 19-22, 46-47), the Court will not reverse the March 16 Order's dismissal of C21's federal dilution claim. See Thane Int'l, 305 F.3d at 906 (similarity of marks test in dilution context is more stringent than test for infringement).

---

[2] As noted by Century, Arizona's dilution statute has not changed. See dkt. 237 at 2 n.5. Thus, the March 16 Order's dismissal of C21's dilution claim under the Arizona statute is not subject to reconsideration.

- 3 -

An *alternative* basis for the March 16 Order's dismissal of C21's federal dilution claim is the Court's finding that no reasonable jury could conclude that the C21 Marks are actually diluted by the Century Marks.[3]  See Dkt. 177 at 47-51.  Although actual dilution is no longer the proper standard for evaluating a dilution claim, a critical component of "actual dilution" is mental association between the marks at issue.  The March 16 Order specifically found that C21 failed to show a genuine dispute of material fact regarding the mental association component of actual dilution.  See Dkt. 177 at 48.

Like the substantial similarity element, the TDRA does not eliminate the requirement that consumers mentally associate the mark used by the alleged diluter with the protected mark.  See 15 U.S.C. § 1125(c)(2)(B)("'dilution by blurring' is *association* arising from the similarity between a mark or trade name and a famous mark . . . .") (emphasis added);Mead Data Central v. Toyota Motor Sales, U.S.A., 875 F.2d 1026, 1030-31 (2d Cir. 1989) (applying New York dilution law, which incorporates "likely to cause dilution" standard; no substantial similarity between LEXIS and LEXUS because dilution requires "mental association"); Fruit of the Loom, Inc. v. Girouard, 994 F.2d 1359, 1363 (9th Cir. 1993) ("Whittling away will not occur unless there is at least some subliminal connection in a buyer's mind between the two parties' uses of their marks.").  Because C21 failed to demonstrate a genuine issue of disputed fact regarding the mental association component of likely dilution (see dkt. 177 at 48), the Court will not reverse the March 16 Order's dismissal of C21's federal dilution claim.  Dkt. 177 at 46-51.

**3.     The TDRA Factors Require Dismissal of C21's Federal Dilution Claim**

Finally, the Court will not reverse the March 16 Order's dismissal of C21's federal dilution claim because, applying the factors set forth in the TDRA to determine whether a mark "is likely to cause dilution by blurring," no reasonable jury could conclude that Century's Marks are likely to cause dilution of C21's Marks by blurring.

---

[3] The C21 Marks and the Century Marks are defined in the March 16 Order. Dkt. 177 at 1-2.

- 4 -

The TDRA specifically provides that

> In determining whether a mark . . . is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:
>
> (i) The degree of similarity between the mark or trade name and the famous mark.
>
> (ii) The degree of inherent or acquired distinctiveness of the famous mark.
>
> (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.
>
> (iv) The degree of recognition of the famous mark.
>
> (v) Whether the user of the mark or trade name intended to create an association with the famous mark.
>
> (vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B)(i)-(vi).

In the present case, applying the factors set forth in the TDRA and assuming, *arguendo*, that C21's Marks are "famous,"[4] the Court finds that no reasonable jury could conclude that Century's Marks are likely to cause dilution by blurring of C21's Marks.

**a.    The Century Marks are Not Similar to the C21 Marks**

In the March 16 Order, the Court found that no jury could reasonably conclude the mark "Century 21" is similar to "Century," in terms of sound, appearance, and connotation.

---

[4] In its Reply, C21 contends the "fame" of the C21 Marks is disputed, and therefore summary judgment may not be granted on its dilution claim. (Dkt. 238 at 2-3.) Any disputes regarding the "fame" of C21's Marks is immaterial, however, because the Court's analysis assumes, *arguendo*, that C21's Marks are "famous."

- 5 -

Dkt. 177 at 19:20-22:14.[5] Of primary importance to this determination is the undeniable fact that the mark "Century 21" must be considered a unitary term, with equal weight provided to both elements of the mark (id. at 21:6-22:2). Because C21's Marks place equal significance on the numeral "21" and the word "Century," there is no genuine dispute of fact that the Marks at issue here differ visually and aurally, and convey entirely different commercial impressions and meanings (id. at 19:20-21:5).[6] The Court's finding that dilution is not likely to result from the contemporaneous use of C21's and Century's Marks is buttressed by undisputed evidence of the commonality of the term "Century" in the real estate and insurance industries (dkt. 177 at 15:11-18:27, 22:3-7). Given the prevalence of the term "Century" in the real estate and insurance industries and the fact that C21's Marks are unitary, the mere commonality of "Century" in both parties' marks is an insufficient basis on which to find substantial similarity, which is necessary to support a federal claim for dilution (id.). See Playboy Enters., Inc., 279 F.3d at 806 n.41 (elucidating the "identical or nearly identical" standard for dilution); Thane Int'l, Inc., 305 F.3d at 906 ("[t]he marks must be of sufficient similarity so that, in the mind of the consumer, the junior mark will conjure an association with the senior"). No reasonable jury could conclude that the Century Marks are substantially similar to the C21 Marks. Thus, this factor favors Century.

---

[5] The Court previously compared "Century" and "Century 21," as those are the most similar of the parties' marks (dkt. 124 ¶141 at 16). See Dkt. 177 at 19 n.14. C21's contention that the Court has not previously compared C21's Marks to the marks specified in the registrations at issue here – "Century Surety Group" and "Century Insurance Group" – is rejected because "Century" is the dominant element of such marks and the descriptive phrases "Surety Group" and "Insurance Group" have been disclaimed. See Dkt. 97, exs. 69-70.

[6] Century's Marks, with their dominant emphasis on the word "Century," suggest an entity that has been established for a long time, perhaps one hundred years, and reflects its past history. C21's Marks suggest innovation and the future. See Century 21 Real Estate Corp. v. Century Life of America, 1992 WL 809137, *5 (T.T.A.B. 1992). In this respect, C21's Marks convey ideas of creativity and innovation. Century's Marks, on the other hand, imply a well-established and long-standing foundation.

### b. The C21 Marks are Inherently Distinctive

Although the mark "Century," standing alone, is not distinctive in either the real estate or insurance industry (dkt. 177at 15:11-18:27, 22:3-7), there is no genuine dispute that the C21 Marks – the term "Century" followed by the numeral "21" – are inherently distinctive and well-recognized in the real estate industry (see dkt. 124¶¶72-74 at 123-24). This factor favors C21.

### c. C21 Engages in Substantially Exclusive Use of the C21 Marks

Although the evidence overwhelmingly demonstrates that C21 does not engage in exclusive use of the term "Century" (see supra at dkt. 177 at 15:11-18:27, 22:3-7), there is no genuine dispute that C21 engages in substantially exclusive use of the mark "Century 21." This factor favors C21 only slightly because it is undisputed that Century does not use the numeral "21" in either "Century Surety Group" or "Century Insurance Group."

### d. Degree of Recognition of the C21 Marks

C21 has not produced any survey information to demonstrate that customers recognize or associate the word "Century" in isolation with the term "Century 21."  (Dkt. 124,  ¶¶108,112 at 14.)   However, there is no genuine dispute that the C21 Marks – use of the term "Century" followed by the numeral "21" – are well-recognized in the real estate industry.  Thus, this factor favors C21.  Again, this factor is not especially significant because it is undisputed that Century does not use the numeral "21" in either of its Marks.

### e. Century did Not Intend to Create an Association with the C21 Marks

C21 has presented no evidence that the Century Marks were adopted in order to trade on C21's goodwill or to create an association with the C21 Marks.  To the contrary, Century's evidence shows without dispute that the origination of Century's Marks had nothing to do with C21.  Century's former parent company was named Century Agency, Inc. and the word "Surety" was consistent with the company's underwriting of surety bonds.  See Dkt. 124¶¶2-3 at 7,24-25.  As a result, the "Century Surety" mark was formed by combining the words "Century" and "Surety."  Century's good faith adoption of its Marks is also shown

by Century's trademark clearance search to determine the availability of registering the marks "Century Surety Group" and "Century Insurance Group" before applying to register them. See Dkts. 86, Exh. 2 at 168-69; 124 ¶195 at 23. C21's unfounded speculation that Century adopted its Marks in bad faith simply because Century "did not choose to expand its services and territory until after Century 21 was a well known mark" (Dkt. 95 at 16), is completely unsupported. See Dkt. 124 ¶26 at 31. This factor favors Century.

### f. There is No Mental Association Between the Marks

In the context of dilution, it is important to emphasize that C21 seeks to enjoin Century from using marks beginning with the word Century even though the mark "Century 21" contains the word Century *and* the numeral "21." (Dkt. 124 ¶¶ 20,109-110,141 at 9,14,16,58-59.) Therefore, the main problem with C21's dilution theory is that C21 has never registered the term "Century" alone, does not use or advertise the word "Century" alone, prohibits Franchisees from abbreviating or shortening the name "Century C21" to "Century," and has not produced any survey information to demonstrate that consumers recognize or associate the term "Century" (in isolation) with the mark "Century 21." See Dkt. 124, ¶¶108-12 at 14,58-59. Moreover, there is no dispute that the word "Century" is extensively employed in both the real estate and insurance industries and therefore is clearly not distinctive. See Dkt. 124, ¶¶148-150 at 64-69; Dkt. 126, Ex. 60 at ¶2 and Ex. 61 at ¶¶2,10 (at least 44 insurance businesses use the term "Century" to promote sales of insurance and at least 126 real estate businesses use the term "Century" to promote sales of real estate).[7] Because C21 has made a concerted effort to ensure that its Marks contain two

---

[7] Relying on Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1014 (9th Cir. 2004), C21 contends "alleged third party use presents factual issues that preclude entry of summary judgment." (Dkt. 238 at 4.) This assertion makes no difference in the instant case because, although C21disagreed with a small percentage of the names on Century's third-party use list (see Dkt. 97, Ex.39), in granting summary judgment the Court relied only on the number of *undisputed* third-party users. See dkt. 177 at 16 n.11. Second, Nissan Motor Co. stands for the proposition that "widespread use of [a] mark in the name of other companies makes fame unlikely." See 378 F.3d at 1014. As noted, this is immaterial here because the Court has assumed, *arguendo*, fame.

terms – both "Century" and "21"– there is no factual basis from which a reasonable jury could find that consumers mentally associate the lone word "Century" with the C21 Marks.

The lack of evidence regarding "mental association" is further shown by undisputed evidence that, during the parties' 15 years of (undisputed) co-existence, none of C21's 4,500 Franchisees (who employ a total of over 120,000 agents) have ever mentioned Century to C21 despite their duty to report infringing uses of the C21 Marks. See Dkt. 124, ¶¶165, 177-179, 181, 183-87 at 20-22. It is also undisputed that C21 itself only became aware of Century's existence when Century's registration applications were published for opposition by the United States Patent and Trademark Office (id. ¶120 at 14). See Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1539 (9th Cir. 1989) ("the parties' concurrent use of 'Accuride' as a trademark for twenty-five years effectively precluded a finding that the value of "Accuride" trade name could be diluted). C21 does not dispute that it knows of no instance in which anyone has ever mentally associated its Marks with the Century Marks and it has produced no evidence of such mental association. See Dkt. 124, ¶¶186-87 at 22. Because C21 has not demonstrated a genuine dispute of fact regarding the mental association component of likely dilution, this factor favors Century overwhelmingly.

### g. **Conclusion on Dilution**

Given the Court's findings on (i) the dissimilarity of the parties' Marks and (ii) the lack of mental association between "Century" and the mark "Century 21," no jury could reasonably conclude Century's Marks are likely to dilute the C21 Marks. See Fruit of the Loom, Inc., 994 F.2d at 1362-63 (applying likelihood of dilution standard; "if 'FRUIT' by itself fell within the protected domain, it could be protected under the Anti-dilution statute against all users, . . . . [t]he humble, humdrum word FRUIT would be barred from use by the Fruit Basket, The Fruit Gallery, and Fruit King, to name only three businesses currently listed in the San Francisco telephone directory").

For the reasons set forth above, the Court will affirm its conclusion in the March 16, 2006 Order granting summary judgment to Century on C21's federal dilution claim. See dkt. 177. Accordingly,

**IT IS HEREBY ORDERED GRANTING** Century 21's Motion for Reconsideration, but **DENYING** C21's request to reverse the March 16, 2006 Order's determination that summary judgment must be granted in favor of Century on C21's federal dilution claim. (Dkt. 235.)

**IT IS FURTHER ORDERED VACATING** the Court's previous Order striking and removing C21's Sealed Reply in Support of Motion to Reconsider Order on Dilution (docket number 238).

**IT IS FURTHER ORDERED GRANTING** C21's Motion to Clarify February 5, 2007 Order, as specified herein. (Dkt. 244.)

**IT IS FURTHER ORDERED** rescinding the Court's previous Order to strike C21's Reply and Ordering the Clerk of Court to remove the following language from the docket: "**\*\*\*DOCUMENT #238 STRICKEN PURSUANT TO ORDER #239 FILED ON 2/06/07 \*\*\***."

**IT IS FURTHER ORDERED** that the Clerk of Court shall **remove and replace** the Order initially filed on February 6, 2007 at **docket #239** with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall make a notation on the docket on the date this Order is entered showing that a Corrected Order was filed on such date at **docket #239.**

DATED this 16th day of February, 2007.

*[signature]*
Stephen M. McNamee
United States District Judge